IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TAUNYA B.,

    Plaintiff,

v.                                                                         Civ. No. 24-252 GBW

LEE DUDEK, *Acting Commissioner of the Social Security Administration*[1],

    Defendant.

## ORDER DENYING REMAND

THIS MATTER is before the Court on Plaintiff's Motion for Judgment on the Pleadings. *Docs. 13, 13-2*. For the reasons explained below, the Court DENIES Plaintiff's Motion and AFFIRMS the judgment of the Social Security Agency ("SSA").

I.    **PROCEDURAL HISTORY**

Plaintiff filed an application for Social Security Disability Insurance benefits ("SSDI") on September 2, 2020, and an application for Social Security Income ("SSI") on June 2, 2022, alleging disability beginning April 9, 2019. Administrative Record ("AR") at 230-36, 240-47. Plaintiff's claims were denied on initial review on August 10, 2021, *id*. at 60-69, and again on reconsideration on February 21, 2023. *Id*. at 70-121. On October

---

[1] Lee Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil procedure, Lee Dudek should be substituted for Commissioner Martin O'Malley as the defendant in this suit.

19, 2023, a hearing was held by an Administrative Law Judge ("ALJ"). *Id*. at 32-59. The ALJ issued an unfavorable decision on December 20, 2023. *Id*. at 15-24. Plaintiff sought review from the SSA's Appeals Council, which denied review on February 7, 2024, *id*. 2-4, making the ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On March 13, 2024, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. *Doc. 1*. On June 9, 2024, Plaintiff filed the instant Motion. *Doc. 13*. Defendant responded on August 14, 2024. *Doc. 15*. Briefing on Plaintiff's Motion was complete on September 27, 2024, with the filing of Plaintiff's reply. *Doc. 19*.

II.   **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation and quotation omitted). Indeed, the substantial evidence standard is met unless the evidence on which the ALJ is "overwhelmed by other evidence in the record or constitutes mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

### III. ALJ EVALUATION

#### A. Legal Standard

For purposes of both SSDI and SSI, an individual is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these

criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520². If the Commissioner finds an individual to be disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at

---

² Plaintiff has applied for both SSDI and SSI. The five-step test for determining disability and other relevant regulations is the same for both benefits but is codified in two separate parts of the Code of Federal Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. Part 404 of Title 20 of the Code of Federal Regulations governs SSDI, while Part 416 governs SSI. In the interests of efficiency and judicial economy, the Court only cites to applicable regulations in Part 404 of Title 20 of the Code of Federal Regulations in this Order, but the analogous regulations in Part 416 also apply.

4

1023.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Id*. at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)).  Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands.  *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process.  At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### B.  The ALJ's Decision

On December 20, 2023, the ALJ issued a decision denying Plaintiff's application for SSDI and SSI.  *See* AR at 15-24.  In denying Plaintiff's application, the ALJ applied the five-step sequential analysis.  At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since April 9, 2019, the alleged onset date."  *Id*. at 17.  At step two, she found that Plaintiff has the following severe impairments: "panic disorder with anxiety, depressive disorder, posttraumatic stress disorder, and ocular migraine."  *Id*. at 18.  She also noted that Plaintiff has a groin injury and adrenal depletion but found these conditions non-severe.  *Id*.

At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. *Id*. at 18-19. The ALJ determined that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself, but these limitations did not satisfy the Paragraph B criteria for a finding of disability under Listings 12.00. *Id*. at 18-19.

At step four, the ALJ found that Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant must completely avoid unprotected heights. She is able to understand, remember, and carry out simple instructions and make commensurate simple, work-related decisions. She is able to maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task. She cannot perform rapid, assembly-line paced work. She requires work that does not involve interaction with the general public. Interactions with coworkers and supervisors should be superficial and incidental to the work performed. She requires work involving no more than occasional change in the routine work setting and no more than occasional independent goal setting or planning. She requires work that does not involve the use of public transportation as part of the job.

*Id*. at 19-20. In making this finding she concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id* at 20. She held, however, that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record. *Id*. She found somewhat persuasive the

6

medical opinion of consulting physician Dr. Victor Salgado. *Id*. at 21. She found the State agency determinations unpersuasive, and also found unpersuasive the opinion of psychological consultative examiner, Dr. Robert Krueger. *Id*.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that she can perform jobs that exist in significant numbers in the national economy. *Id*. at 22-23. Specifically, the ALJ found that Plaintiff can perform the requirements of four representative occupations: (1) garment sorter (DOT 222.687-014); (2) housekeeper (DOT 323.687-014); (3) janitor (DOT 389.683-010); and (4) stores laborer (DOT 922.687-058). *Id*. at 23. Accordingly, the ALJ concluded that Plaintiff was not disabled (as the Social Security Act defines the term) from April 9, 2019, through the date of her decision. *Id*.

### IV. PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred by failing to comply with the explanatory requirements of 20 C.F.R. § 404.1520c(b), specifically by neglecting to conduct the requisite supportability and consistency analysis under 20 C.F.R. § 404.1520c(b)(1)-(2) in determining that Dr. Krueger's opinion was unpersuasive. *See generally doc. 13-2* at 9-13. Plaintiff contends that the ALJ's error was not harmless, asserting that proper consideration of Dr. Krueger's opinion regarding her marked limitations in social interaction would have necessitated an RFC with greater restrictions. *Id*. at 13. Specifically, Plaintiff maintains that such an RFC would have likely included an

inability to consistently interact appropriately with co-workers and supervisors on even a superficial level, thereby precluding all work. *Id*. Plaintiff further suggests that a finding of marked limitations to both social and adaptive abilities should have triggered a finding of disability under the mental health listings such as 12.04, 12.06, and 12.15. *Id*. Defendant counters that the ALJ properly evaluated Dr. Krueger's medical opinion under the revised regulations as part of her RFC finding, and that her conclusions are supported by substantial evidence in the record. *See generally doc. 15*.

V. **ANALYSIS**

A. **How the Commissioner Considers Medical Opinions**

20 C.F.R. §§ 404.1520c and 416.920c provide the analytical framework and articulation requirements for the ALJ's assessment of Dr. Krueger's opinion since Plaintiff applied for SSI and SSDI after March 27, 2017. Under these regulations, the ALJ must consider "five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, 2021 WL 2794533, at *5 & n.8 (10th Cir. July 6, 2021) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)). As the most important of the five factors, *see id.* at *6, supportability and consistency are the only two that the ALJ must explain when assessing the persuasiveness of a medical source's opinions, 20 C.F.R. § 404.1520c(b)(2). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more

8

relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Zhu*, 2021 WL 2794533, at *5 (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

The 2017 regulations that establish an ALJ's responsibility to discuss the supportability and consistency of a medical opinion when articulating its persuasive value do not clearly indicate the required depth of an ALJ's discussion of these two factors. *See* 20 C.F.R. § 404.1520c. Courts have deferred to ALJs' "minimalist" findings on the supportability and consistency of medical opinions. *See Frank v. Kijakazi*, 2021 WL 3796620, at *6 (D. Colo. Aug. 25, 2021); *Cox v. Saul*, 2020 WL 6701426, at *6 (D.N.M. Sept. 9, 2020); *John H. v. Saul*, 2021 WL 872320, at *5 (D. Utah March 8, 2021). Yet, § 404.1520c(b)'s requirement that an ALJ must "explain *how* [he] considered the supportability and consistency factors," 20 C.F.R. § 404.1520c(b)(2) (emphasis added), and a reviewing court's role of determining whether an ALJ's findings are supported by substantial evidence, indicate that an ALJ's explanation must at least "[e]schew[] rote analysis and conclusory explanations [and] discuss. . .the crucial factors in any

9

determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence," *Pamela P. v. Saul*, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (internal ellipses and quotation marks omitted) (quoting *Puckett v. Berryhill*, 2018 WL 6625095, at *9 (S.D.N.Y. July 13, 2018)); *see also Lobato v. Kijakazi*, 2022 WL 500395, at *11 (D.N.M. Feb. 18, 2022) (contextualizing § 404.1520c's explanatory requirements in the "substantial evidence" standard of review). Therefore, while ALJs need not cite to specific record evidence to discharge § 404.1520c(b)'s explanatory requirements, they must "note[] the evidence upon which [they] relied, and that evidence [must be] specific, and verifiably supported by the record evidence." *See Victoria Jean G. v. Kijakazi*, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021); *White v. Kijakazi*, 2021 WL 4256303, at *14 (S.D.W. Va. Aug. 27, 2021) (finding that the ALJ's discussion of medical opinion evidence was adequate because it "not[ed] how the opinions were supported by the evidence of record, while recognizing where they fell short of supportability [and] reconciled where the opinion evidence was consistent and inconsistent with the overall record"), *report and recommendation adopted*, 2021 WL 4255629 (S.D.W. Va. Sept. 17, 2021).

**B. The ALJ Properly Considered Dr. Krueger's Medical Opinion**

In July 2021, Dr. Krueger conducted a psychological consultative examination of Plaintiff. AR at 838-43. Dr. Krueger diagnosed Plaintiff with: (1) Post-Traumatic Stress Disorder, chronic; (2) Panic Disorder; and (3) Major Depressive Disorder, recurrent,

with moderate severity. *Id*. at 842. Dr. Krueger opined that Plaintiff has a minimal impairment in understanding and remembering simple work instructions and moderate impairments in understanding and remembering complex or detailed work instructions, maintaining pace and persistence, adjusting to changes in a work environment, and being aware and reacting appropriately to dangers. *Id*. at 843. He also opined that Plaintiff is markedly impaired in relationships with coworkers, supervisors, and dealing with the general public, and traveling to distant places alone.[3] *Id*.

> In her opinion, the ALJ discussed Dr. Krueger's medical opinion as follows:
>
> The undersigned finds the opinion of psychological consultative examiner unpersuasive. This opinion finds marked social and adaptive limitations, but only moderate understanding and concentrating limits (Exhibit 14F). This opinion is supported with attached examination findings, such as her panic attacks (Exhibit 14F/3). However, marked limitation is not consistent with her lack of psychiatric hospitalizations. Therefore, this opinion is not persuasive.

AR at 21.

### 1. *Supportability*

The ALJ assessed the supportability of Dr. Krueger's opinion by noting that his "opinion is supported with attached examination findings, such as her panic attacks

---

[3] The Court concurs with Defendant's statement that Dr. Krueger did not assess marked limitations to both social and adaptive abilities. *See doc. 15* at 15 n.6. Dr. Krueger's assessment that Plaintiff "would be expected to have marked impairment with traveling to distant places alone" may be relevant to the paragraph B4 criterion concerning adapting and managing oneself. *See* AR at 843. However, this assessment cannot be interpreted as a definitive statement by Dr. Krueger that Plaintiff is markedly impaired in adapting and managing oneself generally.

(Exhibit 14F/3)." *Id*. In her opening brief, Plaintiff contends this assessment is deficient because "the ALJ failed to provide any explanation whatsoever why she felt the expert's opinion was not supported." Doc. 13-2 at 11. In response, Defendant contends that the ALJ explicitly acknowledged that Dr. Krueger's opinion was supported by his attached report detailing Plaintiff's report of frequent panic attacks. *See doc. 15* at 11. In her reply, Plaintiff acknowledges Defendant's concession that the ALJ found Dr. Krueger's opinion to have been adequately supported by his evaluation of Plaintiff. Doc. 19 at 2.[4]

The Court agrees with the parties that the ALJ explicitly acknowledged that she found Dr. Krueger's opinion to have been adequately supported by his evaluation of Plaintiff. The ALJ identified the evidence upon which she relied—specifically, Plaintiff's report to Dr. Krueger regarding frequent panic attacks—to conclude that Dr. Krueger's opinion was substantiated. *See* AR at 21 (citing *id*. at 840). This evidence was both specific and corroborated by the record. *See id*. at 840 (Dr. Krueger noting Plaintiff's report that she has fairly frequent panic attacks and may have a panic attack up to four times per week). Thus, the Court finds that this explanation satisfies the requirements of 20 C.F.R. § 404.1520c(b).

---

[4] The Court reads Plaintiff's reply as a concession that the ALJ's supportability analysis complied with the explanatory requirements of 20 C.F.R. § 404.1520c(b) because after she acknowledged Defendant's concession that the ALJ found Dr. Krueger's opinion to have been adequately supported by his evaluation of Plaintiff, she states that "[t]he key question is therefore whether the ALJ's *consistency* analysis was sufficient to find the opinion to be unpersuasive due to its inconsistency with the remainder of the record despite the ALJ having found the opinion to be fully supported by the expert's own findings." Doc. 19 at 2 (emphasis added). Regardless, the Court finds that the supportability analysis complied with the explanatory requirements of 20 C.F.R. § 404.1520c(b).

12

   2. *Consistency*

The ALJ assessed the consistency of Dr. Krueger's opinion by noting that his marked limitations are "not consistent with [Plaintiff's] lack of psychiatric hospitalizations." AR at 21. Plaintiff contends this assessment is deficient because it only points to the "supposed inconsistency between the expert's opinion and Plaintiff's lack of psychiatric hospitalizations," and "the mere absence of a particular treatment is an insufficient basis for rejection" of a medical opinion. *Doc. 13-2* at 10-12. Citing to *Chavez v. Kijakazi*, 2022 WL 4546252 (D.N.M. Sept. 2022), in support, Plaintiff contends that the ALJ erred in relying on Plaintiff's lack of psychiatric hospitalizations in her consistency analysis because the ALJ "impermissibly neglected to provide any assessment of the potential reasons for why Plaintiff may have chosen not to seek treatment in a particular instance or for why Plaintiff's treatment was more 'conservative' than the ALJ may have expected." *Id*. at 12-13 (citing *Chavez*, 2022 WL 4546252, at *4). In Response, Defendant maintains that "it was entirely appropriate (and reasonable) for the ALJ to find Plaintiff's lack of psychiatric hospitalization inconsistent with Dr. Krueger's assessment for marked mental work limitations." *See doc. 15* at 13-14.

Plaintiff's reliance on *Chavez* is inapposite in this context. In *Chavez*, the claimant argued that the ALJ committed legal error when discrediting his statements about the intensity, persistence, and limiting effects of his mental impairments pursuant to 20

13

C.F.R. § 404.1529 without first assessing the potential reasons for why he may have chosen not to seek treatment in a particular instance or for why his treatment approach was more conservative than the ALJ may have expected. *Chavez*, 2022 WL 4546252 at *3. Consequently, the question in *Chavez* was whether the ALJ had properly evaluated "a claimant's statements about their medical impairments." *Id*. This question is directly covered by Soc. Sec. Ruling 16-3p. *See* SSR 16-3P, 2017 WL 5180304. Reviewing SSR 16-3p, this Court held that

> While evaluating the consistency of the *claimant's symptom statements* and the extent to which the claimant's symptoms may affect his ability to work, the ALJ may also consider treatment that the claimant has undergone for any of his symptoms. Notably, if the ALJ chooses to consider the "frequency or extent of the treatment sought" by the claimant, the ALJ *may not* rely on this information to "find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."

*Id*. at *4 (citing SSR 16-3P, 2017 WL 5180304 at *9) (other citations omitted) (first emphasis added). However, neither *Chavez* nor SSR 16-3p applies to Plaintiff's instant argument. Plaintiff is asserting that the ALJ improperly relied on her lack of psychiatric hospitalizations to find *Dr. Krueger's medical opinion* inconsistent with the evidence in the record, not that the ALJ relied on her lack of psychiatric hospitalizations to find *her reported symptoms* inconsistent with the evidence in the record. Although an ALJ evaluates the consistency of both a claimant's symptom statements and medical opinions from medical sources, the evaluations are governed by distinct regulations and

14

standards, each requiring different analytical frameworks and articulation requirements. *Compare* 20 C.F.R. § 414.1520a (Evaluation of mental impairments), *with* 20 C.F.R. § 404.1520c (How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017). As this Court held in *Chavez*, an ALJ may not rely on the frequency or extent of the treatment sought by the claimant when evaluating *the consistency of the claimant's symptom statements* under § 414.1520a (SSR 16-3p) to determine that the claimant's symptom statements are inconsistent with the evidence in the record without first considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. *See Chavez*, 2022 WL 4546252, at *4; SSR 16-3P, 2017 WL 5180304 at *9. However, this prohibition is not found in § 404.1520c which governs an ALJ's evaluation of *the consistency of a medical opinion*. Plaintiff cites to no caselaw or regulatory language to support importing the SSR 16-3p prohibition into the evaluation of the consistency of medical opinions. To the contrary, while fairness would seem to dictate requiring ALJs to consider other explanations before rejecting a claimant's subjective symptom statements based on lack of treatment, the same considerations are not present when judging the opinion of a medical expert. Accordingly, the Court will not *per se* reject the ALJ's reliance on Plaintiff's lack of psychiatric hospitalizations when evaluating Dr. Krueger's medial opinion without first considering potential explanations for Plaintiff's decision not to seek such treatment.

The Court thus turns to whether the ALJ sufficiently considered and explained her approach when evaluating the consistency of Dr. Krueger's opinion when stating that his marked limitations are "not consistent with [Plaintiff's] lack of psychiatric hospitalizations." AR at 21. Although the ALJ's analysis is relatively brief, the court "cannot insist on technical perfection" in reviewing the ALJ's decision. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). As noted above, 20 C.F.R. § 404.1520c(b)'s explanatory requirement requires that the ALJ "note[] the evidence upon which [they] relied, and that evidence [must be] specific, and verifiably supported by the record evidence." *Victoria Jean G.*, 2021 WL 4168124, at *5. The evidence upon which the ALJ relies upon can be evidence from other medical and nonmedical sources. *See* § 404.1520c(c)(2) ("*Consistency*. The more consistent a medical opinion[]. . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[]. . . will be."). Here, the ALJ noted the evidence upon which she relied—specifically, Plaintiff's lack of psychiatric hospitalizations—to conclude that Dr. Krueger's marked limitations were inconsistent with the overall record. AR at 21. This evidence was both specific and corroborated by the record. *See id*. at 849 (April 2021 Progress Notes by Dr. Manuel A. Guillen indicating that Plaintiff has no history of psychiatric hospitalization). By expressly citing record evidence with which the ALJ determined Dr. Krueger's opinion to be inconsistent, the ALJ sufficiently evaluated the consistency of Dr. Krueger's opinion as compared to the medical record

16

as a whole and thus the Court finds no error in her finding that Dr. Kruger's opinion was not persuasive. *Cf. Frazer v. Kijakazi*, 2022 WL 682661 (D.N.M. Mar. 8, 2022) (the undersigned granting remand because the ALJ erred in his discussion of the consistency factor in evaluating a medical opinion because he "failed to identify, even in general terms, any portion of [the doctor's] treating source statement, any particular record evidence or general type of record evidence (e.g., objective medical evidence, hearing testimony, etc.), or otherwise any specific contraction" which prevented the undersigned from being able to determine whether substantial evidence supported the ALJ's consistency finding).

Plaintiff contends the ALJ was required to explain why a marked social limitation would necessarily lead to psychiatric hospitalization. However, the Court does not interpret the ALJ's consistency evaluation to imply that a marked social limitation could only be found if it were accompanied by a corresponding psychiatric hospitalization. Rather, after reviewing the record, the ALJ considered the absence of psychiatric hospitalizations as one piece of evidence inconsistent with the existence of a marked social limitation. This finding does not suggest that the ALJ viewed psychiatric hospitalization as a prerequisite for establishing marked social limitations. An observed inconsistency does not equate to imposing a mandatory requirement.

The Court recognizes that the record contains evidence that Plaintiff's impairments create social limitations in the workplace. However, the fact that evidence

17

could support another conclusion does not necessarily mean that the ALJ erred in her analysis. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (recognizing the ALJ is entitled to resolve evidentiary conflicts where the record "contains support for both the notion that [claimant] has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe"); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that "the ALJ is entitled to resolve conflicts in the record"). After reviewing the administrative record, the Court concludes that there is substantial evidence supporting the ALJ's assessment of the limited persuasiveness of Dr. Kruger's medical opinion. For example, Dr. Krueger's assessment that Plaintiff is "markedly impaired" in her ability to interact with coworkers, supervisors, and the general public is contradicted by evidence in the record indicating that Plaintiff is described as pleasant in demeanor. AR at 823, 952. Additionally, Plaintiff's documented activities, such as shopping in stores and attempting to establish her own business—which inherently involves interactions with clients—further undermine this characterization. *See id*. at 40, 297.

    Accordingly, the Court finds that the ALJ applied the correct legal standards in analyzing Dr. Krueger's medical opinion, and her conclusions were supported by substantial evidence in the record. Thus, Plaintiff's arguments that the ALJ erred in evaluating Dr. Krueger's medical opinion are unavailing. Because the Court concludes

that the ALJ did not err in evaluating Dr. Kreuger's medical opinion, the Court does not conclude that the ALJ's findings at Steps 3 or 4 were erroneous.

## VI.  CONCLUSION

For the foregoing reasons, the Court finds that the ALJ did not commit reversable error.  Therefore, the Court DENIES Plaintiff's Motion for Judgment on the Pleadings (*doc. 13*) and AFFIRMS the Commissioner's decision.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**